# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

UNITED STATES OF AMERICA             PLAINTIFF

v.           Case No. 4:18-cr-00054-02 KGB

CAMERON A. BRYANT             DEFENDANT

## ORDER

Before the Court are four motions to suppress filed by defendant Cameron A. Bryant (Dkt. Nos. 113, 145, 146, 147). The United States responded to the motions (Dkt. Nos. 114, 148). For the following reasons, the Court denies each motion to suppress filed by Mr. Bryant.

**I.**     **Motion To Suppress – Trash Pull**

Mr. Bryant challenges the evidence found in a "trash pull" on February 6, 2018, and all evidence seized as a result of the execution of a search warrant on February 16, 2018, at #3 Treasure Hill Circle (Dkt. No. 113, at 3). Mr. Bryant specifically challenges the sufficiency of an affidavit submitted in support of an application for search warrant, which United States Magistrate Judge Beth Deere granted (Dkt. No. 113, at 2-3). He argues, in pertinent part, "[t]he issuing magistrate was simply incorrect in determining that the affidavit supplied sufficient information to form probable cause, because there is no information that anyone from #3 Treasure Hill Circle left the trash receptacle near the end of the driveway, nor is there any information that the mail addressed to #3 Treasure Hill Circle was found in a white trash bag containing any of the alleged contraband." (Dkt. No. 113, at 3).

     **A.**     **Trash Pull**

Mr. Bryant maintains that "Pulaski County Sheriff's Officers and Task Force Officers went to the residence located at #3 Treasure Hill Circle, Little Rock, Arkansas and performed a 'trash

pull'. Officers 'collected four white trash bags from the trash receptacle at #3 Treasure Hill Circle in Little Rock. The receptacle was located at the end of the driveway near the street waiting for pickup." (Dkt. No. 113, at 1). Mr. Bryant argues that, based on the affidavit supplied by Officer Cardarious Walker, "law enforcement did not observe the trash receptacle being placed near the end of the driveway[,] and there is no indication from the affidavit that the alleged baggies with methamphetamine residue, green leafy substance, and Hornaday ammunition box were located in the same bag as the one piece of mail addressed to #3 Treasure Hill Circle." (Dkt. No. 113, at 2). Further, Mr. Bryant argues that the affidavit claims that the items mentioned were found in three of the four white trash bags and that nothing indicates the green leafy substance was tested for or confirmed to be marijuana (*Id.*).

The United States, in its response, submits Officer Walker's affidavit submitted to Judge Deere in support of the application for warrant for review by this Court. In his affidavit, Officer Walker describes controlled buys of controlled substances from one of Mr. Bryant's co-defendants, Marine Thompson, that occurred prior to the trash pull challenged by Mr. Bryant (Dkt. No. 114-1, ¶¶ 9-14). Officer Walker also describes, as to the controlled buy on January 4, 2018, that agents followed Mr. Thompson to #3 Treasure Hill Circle during the controlled buy in response to a request made of Mr. Thompson to purchase two more ounces of the controlled substance (*Id.*, ¶¶ 14-15). After traveling to the home on Treasure Hill Circle, Mr. Thompson returned to the scene of the controlled buy with additional quantities of the controlled substance. Mr. Thompson also returned to the home at #3 Treasure Hill Circle after the transaction.

Officer Walker also explained that, on February 6, 2018, agents "collected four white trash bags from the trash receptacle at #3 Treasure Hill Circle in Little Rock. The receptacle was located

at the end of the driveway near the street waiting for pickup." (Dkt. No. 114-1, ¶ 16). Officer Walker affirmed that the listed items "were located inside the three trash bags." (*Id.*).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. The "warrantless search and seizure of the garbage bags left at the curb outside of the [] house would violate the Fourth amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988). "When moving to suppress evidence on the basis of an alleged unreasonable search, the defendant has the burden of showing a legitimate expectation of privacy in the area to be searched." *United States v. Stults*, 575 F.3d 834, 842 (8th Cir. 2009) (quoting *United States v. James*, 534 F.3d 868, 872 (8th Cir. 2008)).

It is well established that there is no reasonable "expectation of privacy in trash left for collection in an area accessible to the public." 486 U.S. at 41. In *United States v. Thompson*, 881 F.3d 629, 631-32 (8th Cir. 2018), defendant Thompson challenged a trash pull and argued that, because the trash was left in a container next to his garage—rather than on a street curb, the trash was within the curtilage of his home and that he retained a reasonable expectation of privacy in it. The Eighth Circuit Court of Appeals determined that, assuming the trash was within the curtilage of Mr. Thompson's home, "the proper focus under *Greenwood* [remains] whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable." *Thompson*, 881 F.3d at 631-32 (quoting *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992) (internal quotation marks omitted)).

The district court in *Thompson* determined, and the Eighth Circuit agreed, that Mr. Thompson's trash was readily accessible to the public, the garbage container was easily visible

3

from the street, and there were no barriers preventing access to the container or its contents. The trash was placed in a location from which the garbage collectors regularly collected it at the regularly-scheduled time of collection, suggesting it was placed there "for the express purpose of having strangers take it." *Thompson*, 881 F.3d at 631-32 (quoting *Greenwood*, 486 U.S. at 40-41). The court determined that "strangers might 'sort[ ] through [the] trash or permit[ ] others, such as the police, to do so.'" *Thompson*, 881 F.3d at 631-32 (quoting *Greenwood*, 486 U.S. at 40). Based on these facts, the court determined that Thompson had no objectively reasonable expectation of privacy in the trash, resulting in the denial of the motion to suppress.

Here, Officer Walker in his affidavit states, "[t]he receptacle was located at the end of the driveway near the street waiting for pickup." (Dkt. No. 114-1, ¶ 16). As a result, the Court determines Mr. Bryant had no subjective expectation of privacy in the garbage that society accepts as objectively reasonable.

Further, based on *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012), the Court determines that it need not conduct a hearing to rule on Mr. Bryant's pending motion to suppress related to the trash pull and #3 Treasure Hill Circle. The *Franks* standard governs whether this Court should conduct an evidentiary hearing prior to ruling on a pending motion to suppress. Under that standard:

> [t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.

*United States v. Mims,* 812 F.2d 1068, 1074 (8th Cir. 1987) (quoting *Franks v. Delaware,* 438 U.S. 154, 171 (1978)).

In *United States v. Williams*, 669 F.3d at 905, the only evidence presented to the district court regarding the location of the trash was Detective Miller's statement in his affidavit that he "retrieved three bags of trash that had been *left at the curb for pick-up by a trash company* " (emphasis added). The Eighth Circuit acknowledged that, in the brief in support of the motion to suppress, defendant Williams' counsel contended that "the officers illegally retrieved three trash bags from the *driveway* of the residence" (emphasis added). The court determined that, to the extent defendant Williams contended that the trash actually was not at the curb as stated in the affidavit, defendant Williams was challenging the factual accuracy of the affidavit. *Id.* at 905. The court concluded that, because defendant Williams proffered no affidavit or other evidence indicating that the trash was not at the curb, the district court did not abuse its discretion in denying an evidentiary hearing when denying the motion to suppress.

For these reasons, the Court denies without a hearing Mr. Bryant's motion to suppress based on his challenge to the trash pull.

### B. Search Of #3 Treasure Hill Circle

The Fourth Amendment to the United States Constitution says that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As a result, the Fourth Amendment establishes two requirements: (1) particularity and (2) probable cause. *United States v. Swift*, 720 F. Supp. 2d 1048, 1055 (E.D. Ark. 2010) (internal quotations omitted). Here, Mr. Bryant maintains that Officer Walker's affidavit does not sufficiently establish probable cause to search #3 Treasure Hill Circle.

Officer Walker's affidavit describes the controlled buy on January 4, 2018, and that agents followed Mr. Thompson to #3 Treasure Hill Circle during the controlled buy in response to a

request made of Mr. Thompson to purchase two more ounces of the controlled substance. After traveling to the home on Treasure Hill Circle, Mr. Thompson returned to the scene of the controlled buy with additional quantities of the controlled substance. Mr. Thompson also returned to the home at #3 Treasure Hill Circle after the transaction. Further, Officer Walker also explained that, on February 6, 2018, agents "collected four white trash bags from the trash receptacle at #3 Treasure Hill Circle in Little Rock. The receptacle was located at the end of the driveway near the street waiting for pickup." (Dkt. No. 114-1, ¶ 16). Officer Walker affirmed that the listed items "were located inside the three trash bags." (*Id.*). "[I]tems found in a trash pull, standing alone, may be sufficient to establish probable cause." *United States v. Thurmond*, 782 F.3d 1042, 1044 (8th Cir. 2015); *see also United States v. Allebach*, 526 F.3d 385, 386 (8th Cir. 2008); *United States v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003). The Court rejects Mr. Bryant's argument; Officer Walker's affidavit establishes probable cause to search #3 Treasure Hill Circle and provides a proper description of the place to be searched and items to be seized.

The Court has discretion when deciding whether to hold an evidentiary hearing on a motion to suppress. *United States v. Hardison*, 859 F.3d 585, 589 (8th Cir. 2017) (citing *United States v. Losing*, 539 F.2d 1174, 1177 (8th Cir. 1976)). The "decision whether to hold an evidentiary hearing depends on the particular facts and circumstances of each case." *Compare United States v. Golden*, 418 F. Supp. 3d 416, 420 (D. Minn. 2019) (explaining a hearing was necessary where the Government "sought to meet its burden by relying solely on a set of exhibits whose relevance and authenticity were open to question"), *with Losing*, 539 F.2d at 1177 (suppression hearing unnecessary when no factual dispute exists and suppression can be decided as a matter of law). Here, an evidentiary hearing is unnecessary to resolve this motion to suppress. Mr. Bryant's motion to suppress concerns a challenge to the particularity of the search

warrant at issue for #3 Treasure Hill Circle. The search warrant and affidavit at issue are already part of the record, and the parties have fully briefed the issue.

Even if this Court were to assume for purposes of resolving the motion to suppress only that the search warrant for #3 Treasure Hill Circle lacked probable cause, that does not automatically result in the suppression of evidence obtained during the execution of the search warrant. "Before 'reviewing the existence of probable cause,' this court 'may consider the applicability of the good-faith exception to the exclusionary rule,'" which permits evidence obtained in reliance on an "objectively reasonable" warrant. *United States v. Williams*, 976 F.3d 807, 809 (8th. Cir. 2020) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). In other words, the "exclusionary rule is not applied in cases 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897 920 (1984)). "In cases of good faith, the evidence, although seized pursuant to a warrant that lacked probable cause, nonetheless is admissible at trial." *Id.* The good-faith exception applies unless the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984).

"*Leon* identified four circumstances in which an officer's reliance on a warrant is not in objective good faith: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned her judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the

7

warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Id.* "Entirely unreasonable is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *United States v. Ross*, 487 F. 3d 1120, 1122-23 (8th Cir. 2007). Mr. Bryant has not alleged that any officer knowingly and intentionally included a false statement or made one in reckless disregard of the truth. Further, there is no allegation that the warrant itself was facially deficient or that any of the other circumstances identified in *Leon* apply. The Court concludes that, even if probable cause were lacking, the *Leon* good-faith exception to the exclusionary rule applies to the evidence obtained in reliance on this objectively reasonable warrant.

For these reasons, the Court denies without a hearing Mr. Bryant's motion to suppress regarding #3 Treasure Hill Cove and determines, for the reasons explained, that suppression is not appropriate.

**II.     Motion To Suppress – Cell Phones**

According to Mr. Bryant, on July 30, 2020, Task Force Officer Robert Bell applied to the Pulaski County, Arkansas, District Court for a search warrant for Mr. Bryant's cell phones, which were seized at the time of his arrest (Dkt. No. 145, at 1).[1] Mr. Bryant contends that the affidavit for the search warrant failed to state probable cause for the search of Mr. Bryant's cell phones, specifically contending that "[t]he affidavit fails to include any allegations the phones were used during the commission of narcotics transactions, that cell phones are regularly used during the

---

[1] Mr. Bryant's motion refers to both "cell phones" and "cell phone." (Dkt. No. 145). There are two affidavits for search and seizure warrants executed in this case, and each refers to one phone by model and IMEI number that was in Mr. Bryant's possession (Dkt. Nos. 145-1, 145-2).

8

commission of narcotics trafficking or that Defendant was even observed using a cell phone at all much less used it in relation to narcotics transactions." (*Id.*).

Based on the record presented by Mr. Bryant, Pulaski County, Arkansas, District Court Judge Melanie Martin issued the search and seizure warrants for the cell phones on July 30, 2020, based on the information presented in the affidavits (Dkt. Nos. 145-1; 145-2). In his motion, Mr. Bryant seeks to suppress all evidence seized in relation to the search of Mr. Bryant's cell phones pursuant to the warrant issued (Dkt. No. 145, at 2).

"When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)). To resolve this motion, the Court assumes without deciding that Judge Martin reviewed only the affidavits attached to the motion when determining whether to issue the warrants for the search of the cell phones and, as a result, confines its review to the affidavits attached to the motion.

The affidavits establish sufficient probable cause for issuance of the warrant to search Mr. Bryant's cell phones and provide a proper description of the phones to be searched and items to be seized. Officer Bell avers that he had reasonable cause to believe, and did believe, that the cell phones were in Mr. Bryant's "possession while conducting narcotics transactions" and that one phone "was located on the passenger seat" of Mr. Bryant's vehicle at the time of his arrest while the other phone was located between the driver's seat and the center console of the vehicle (Dkt. Nos. 145-1, at 1; 145-2, at 1). Further, Officer Bell explained in his affidavits that, prior to obtaining the search warrant for the cell phones, officers executed the search warrant at 17 Connolly Court and located approximately 1 ounce of Fentanyl hidden in the garage and executed

the search warrant for Mr. Bryant's vehicle and located approximately 36 grams of Fentanyl and 11 grams of Heroin in the center console and driver side door pocket (Dkt. Nos. 145-1, at 2; 145-2, at 2). The other phone located between the driver's seat and the center console was discovered when officers executed the search warrant on Mr. Bryant's vehicle (Dkt. No. 145-2, at 2). Officer Bell explained that he believed evidence related to the investigation of Mr. Bryant, which the Court understands from a review of the affidavit was an investigation of suspected narcotics trafficking, was located in the cellular phones (Dkt. Nos. 145-1, at 2; 145-2, at 3).

Even if this Court were to assume for purposes of resolving the motion to suppress only that the search warrants for the cell phones lacked probable cause, that does not automatically result in the suppression of evidence obtained during the execution of the search warrants. The Court concludes that, even if probable cause were lacking in the challenged affidavits, the *Leon* good-faith exception to the exclusionary rule applies to the evidence obtained in reliance on these objectively reasonable warrants for Mr. Bryant's cell phones.

The Court determines that it need not conduct a hearing to resolve this pending motion to suppress with regard to Mr. Bryant's cell phones. Mr. Bryant's motion to suppress concerns a challenge to the particularity of the search warrants for the cell phones. The search warrants and affidavits at issue are already part of the record, and the parties have fully briefed the issues. Mr. Bryant offered no proof, other than the affidavits and warrants, when filing his motion on this point.

For these reasons, the Court denies without a hearing Mr. Bryant's motion to suppress the evidence seized from a search of his cell phones and determines, for the reasons explained, that suppression is not appropriate.

### III. Motion To Suppress – 17 Connolly Court

Mr. Bryant states in his motion challenging the search of 17 Connolly Court that he was arrested on July 28, 2020, after law enforcement officers allegedly observed a hand-to-hand drug transaction (Dkt. No. 146, at 1). On July 28, 2020, Officer Bell applied to the Pulaski County, Arkansas, District Court for a search warrant for Mr. Bryant's residence located at 17 Connolly Court, Little Rock, Arkansas. Mr. Bryant challenges that affidavit, claiming that "[t]he affidavit for the search warrant is utterly devoid of any facts that would lead a neutral and detached magistrate to believe that evidence of narcotics activity would be found in Defendant's residence located 17 Connolly Court, Little Rock, Arkansas." (Dkt. No. 146, at 1). Mr. Bryant specifically asserts that "[t]he affidavit fails to include any allegations the residence was used to store narcotics or that narcotics transactions were taking place at the residence" and that it is "devoid of any factual reason why the officers might believe there would be narcotics or narcotics related items at 17 Connolly Court, Little Rock, Arkansas." (Dkt. No. 146, at 1). The Court disagrees for the following reasons.

Based on the record presented by Mr. Bryant, Pulaski County, Arkansas, District Court Judge Melanie Martin issued the search and seizure warrant for 17 Connolly Court on July 28, 2020, based on the information presented in the affidavit (Dkt. No. 146-1). In his motion, Mr. Bryant seeks to suppress all evidence seized in relation to the search of Mr. Bryant's residence located at 17 Connolly Court, Little Rock, pursuant to the warrant issued (Dkt. No. 146, at 2).

To resolve this motion, the Court assumes without deciding that Judge Martin reviewed only the affidavit attached to the motion when determining whether to issue the warrant for the search of 17 Connolly Court and, as a result, confines its review to the affidavit attached to the

motion. *See Etheridge*, 165 F.3d at 656. The affidavit establishes sufficient probable cause for issuance of the warrant and provides a proper description of the place to be searched and items to be seized. Officer Bell states that officers were conducting surveillance on Mr. Bryant at 17 Connolly Court, which Officer Bell identified as premises occupied by Mr. Bryant, and observed Mr. Bryant leave the residence. Mr. Bryant then traveled to the Dollar General, and Officer Bell described in his affidavit the transaction at the Dollar General, explaining that based on officer training and experience, an officer working on this investigation with Officer Bell believed that he observed a hand-to-hand narcotics transaction taking place with Mr. Bryant at the Dollar General parking lot (Dkt. No. 146-1). After officers moved in, Mr. Bryant attempted to flee but was arrested. Officer Bell then "observed a baggie containing Marijuana in the handle of the passenger door as well as two small baggies containing an unknown white powder like substance in the driver side floor board." (Dkt. No. 146-1, at 2). Officer Bell avers that "from his background, training, experience, as well as the presence of Marijuana and other narcotics in Bryant's vehicle, shows possession, use of, and/or distribution of illicit narcotics." (Dkt. No. 146-1, at 2). After Mr. Bryant's arrest and the observation in plain sight of narcotics in Mr. Byrant's vehicle upon his arrest, officers secured the residence located at 17 Connolly Court, conducted a safety sweep, and advised that there were no other occupants present (Dkt. No. 146-1, at 2). In reference to 17 Connolly Court, Officer Bell stated his belief that there was "being concealed certain evidence, to wit: Marijuana; said evidence being illegal and evidence that a crime is being committed." (Dkt. No. 146-1, at 1).

The Court also concludes that, even if sufficient probable cause to issue the warrant was lacking, the *Leon* good faith exception applies. "*Leon* identified four circumstances in which an officer's reliance on a warrant is not in objective good faith: (1) when the affidavit or testimony

supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned her judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Leon*, 468 U.S. at 923. These circumstances have not been demonstrated on the record before the Court.

The Court determines that it need not conduct a hearing to resolve this pending motion to suppress. Mr. Bryant offered no proof, other than the affidavit and warrant, when filing his motion on this point. The Court relies on the affidavit and warrant to resolve Mr. Bryant's motion.

For these reasons, the Court denies without a hearing Mr. Bryant's motion to suppress the evidence seized from a search of 17 Connolly Court and determines, for the reasons explained, that suppression is not appropriate.

### IV. Motion To Suppress – Vehicle

On July 28, 2020, Officer Bell applied to the Pulaksi County, Arkansas, District Court for a search warrant for Mr. Bryant's vehicle. Mr. Bryant claims in his motion that "[p]rior to application for a search warrant officers had already searched Defendant's vehicle." (Dkt. No. 147, at 1). Mr. Bryant asserts specifically:

> Law enforcement was surveilling Defendant when he parked at a Dollar General store. Officers allegedly decided to stop and detain Defendant after allegedly observing a hand to hand drug transaction. There was no hand to hand drug transaction. Law enforcement had no reasonable suspicion that Defendant had committed or was about to commit a crime and any claim to the contrary is pretextual.

(Dkt. No. 147, at 1).

13

Further, Mr. Bryant asserts in his motion that officers' descriptions of what occurred "prior to and during Mr. Bryant's detention differ from officer to officer" and claims that, upon his detention, law enforcement searched his vehicle (Dkt. No. 147, at 1). For these reasons, Mr. Bryant claims that "[a]ll evidence obtained subsequent to Defendant's unconstitutional detention should be suppressed as being fruit of the poisonous tree." (Dkt. No. 147, at 2).

Based on the record presented by Mr. Bryant, Pulaski County, Arkansas, District Court Judge Melanie Martin issued the search and seizure warrant for vehicle on July 28, 2020, based on the information presented in the affidavit (Dkt. No. 147-1). In his motion, Mr. Bryant seeks to suppress all evidence seized in relation to the search of Mr. Bryant's vehicle pursuant to the warrant issued (Dkt. No. 147, at 2).

To resolve this motion, the Court assumes without deciding that Judge Martin reviewed only the affidavit attached to the motion when determining whether to issue the warrant for the search of the vehicle and, as a result, confines its review to the affidavit attached to the motion. *See Etheridge*, 165 F.3d at 656. In the affidavit presented to Judge Martin, Officer Bell affirmed, in part, the following:

- Agents were conducting surveillance on Mr. Bryant at 17 Connolly Court, watched him leave the residence, and had him under surveillance as he traveled to the Dollar General.

- Agents observed Mr. Bryant turn into the Dollar General parking lot.

- Agents observed a white mini-van pull up next to Mr. Bryant's vehicle "at which time the occupant of the mini-van made contact with Bryant" and that an agent, based on "training and experience," "knew this to be a hand to hand narcotics transaction taking place."

- After the white mini-van pulled away and left the area, a red sedan pulled up next to Mr. Bryant's vehicle.

- Agents, "with their emergency equipment activated, pulled in around the vehicle in an attempt to keep Bryant from trying to pull away."

- Mr. Bryant "attempted to flee and in doing so, began ramming through Task Force officer's vehicles. After having to use force to subdue Bryant, he was taken into custody and his vehicle was secured. In plain sight, the Affiant TFO Bell observed a baggie containing Marijuana in the handle of the passenger door as well as two small baggies containing an unknown white powder like substance in the driver side floor board."

- Officer Bell, based on "his background, training, experience, as well as the presence of Marijuana and other narcotics in Bryant's vehicle, shows possession, use of, and/or distribution of illicit narcotics."

- Officer Bell states that he has been a certified police officer employed by the Little Rock Police Department for over 20 years, has been assigned to the Federal Bureau of Investigation GET-Rock Task Force since August 2019, and has participated in the execution of numerous Search and Seizure warrants including many that related to trafficking of narcotics.

(Dkt. No. 147, at 1-2). These allegations are substantially similar to the allegations submitted in the affidavit in support of the request for a warrant for 17 Connolly Court; the Court confines its review to the affidavit submitted in support of the request for a warrant to search the vehicle.

The affidavit establishes sufficient probable cause for issuance of the warrant and provides a proper description of the vehicle to be searched and items to be seized.

The totality of the circumstances provided reasonable suspicion, at a minimum, to conduct a *Terry* Stop on Mr. Bryant's vehicle. *See United States v. Bustos-Torres*, 396 F.3d 935 (8th Cir. 2005). With respect to a *Terry* Stop, "[t]he Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007). "An officer's suspicion is reasonable if he 'knows particularized, objective facts that lead to a rational inference that a crime is being or has been committed.'" *United States v. Gannon*, 531 F.3d 657, 661 (8th Cir. 2008) (quoting *United States v. Hernandez-Hernandez*, 327 F.3d 703, 706 (8th Cir. 2003)). Agents had Mr. Bryant under surveillance from 17 Connolly Court to the Dollar General. The

15

agents observed Mr. Bryant's interactions with the white mini-van and red sedan. The affidavit establishes that an agent, based on training and experience, knew this to be a hand-to-hand narcotics transaction taking place.

As explained by Officer Bell in the affidavit, at that point, Mr. Bryant attempted to flee police after officers activated emergency lights and sirens and blocked in Mr. Bryant's vehicle. At the time agents stopped Mr. Bryant's vehicle, Officer Bell saw in plain sight marijuana in the handle of the passenger door and two small baggies of white powdery substance in the driver's side floorboard. That packaging is consistent with narcotics trafficking. Those observations alone provided probable cause to seize the marijuana and baggies from the vehicle without a warrant. *See United States v. Hatten*, 68 F.3d 257, 260-61 (8th Cir. 1995) (examining the plain-view doctrine).

Even if this Court were to assume for purposes of resolving the motion to suppress only that the search warrant for the vehicle lacked probable cause, that does not automatically result in the suppression of evidence obtained during the execution of the search warrants. The Court concludes that, even if probable cause were lacking in the challenged affidavit, the *Leon* good-faith exception to the exclusionary rule applies to the evidence obtained in reliance on this objectively reasonable warrant for Mr. Bryant's vehicle.

The Court determines that it need not conduct a hearing to resolve this pending motion to suppress with regard to Mr. Bryant's vehicle. The Court acknowledges that Mr. Bryant requested a hearing on all pending motions to suppress before the Court. The motion related to the search of Mr. Bryant's vehicle is the only motion to raise an argument regarding the factual basis of the affidavit. To merit a hearing on a motion to suppress, the moving party must be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues

of fact going to the validity of the search [or seizure] are in question." *Losing,* 539 F.2d at 1177 (quoting *United States v. Ledesma,* 499 F.2d 36, 39 (9th Cir.)), *cert. denied* 419 U.S. 1024 (1974); a*ccord*, *United States v. Mims*, 812 F.2d at1074 (In *Mims*, the court also held: "A hearing is also unnecessary if it can be determined that suppression is improper as a matter of law."). Mr. Bryant in his motion offered argument only regarding the factual basis of the affidavit. Mr. Bryant offered no proof, other than the affidavit and warrant, when filing his motion.

As to his argument, Mr. Bryant contests only whether it was reasonable for the agent to stop and detain Mr. Bryant after allegedly observing a hand-to-hand drug transaction. Mr. Bryant's argument is that there was no hand-to-hand drug transaction, but he offers no proof on this point and does not attempt to refute the underlying facts reported in the affidavit with respect to the white mini-van and red sedan in the Dollar General parking lot.

Mr. Bryant also argues that "[p]rior to application for a search warrant officers had already searched Defendant's vehicle." (Dkt. No. 147, at 1). Mr. Bryant offers no proof to support that argument, and he does not dispute that he "attempted to flee and in doing so, began ramming through Task Force officer's vehicles. After having to use force to subdue Bryant, he was taken into custody and his vehicle was secured. In plain sight, the Affiant TFO Bell observed a baggie containing Marijuana in the handle of the passenger door as well as two small baggies containing an unknown white powder like substance in the driver side floor board," which are the statements Officer Bell made in his affidavit (Dkt. No. 147-2, at 1-2).

For these reasons, the Court denies without a hearing Mr. Bryant's motion to suppress the evidence seized from a search of the vehicle and determines, for the reasons explained, that suppression is not appropriate.

## V. Conclusion

For these reasons, Mr. Bryant's motions to suppress are denied (Dkt. Nos. 113, 145, 146, 147).

It is so ordered this 21st day of June, 2021.

_____
Kristine G. Baker
United States District Judge